IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER ANDERSON, <br> Plaintiff, | : <br> : <br> : | |
| v. | : | CIVIL ACTION NO. 18-CV-3508 |
| MICHAEL DOHMAN, *et al.*, <br> Defendants. | : <br> : <br> : | **FILED** <br> AUG 3 0 2018 <br> KATE BARKMAN, Clerk <br> By_____Dep. Clerk |

**MEMORANDUM**

JONES, J.                                                                                                AUGUST 29, 2018

*Pro se* Plaintiff Walter Anderson, a state inmate currently incarcerated at SCI Frackville, brings this civil action pursuant to 42 U.S.C. § 1983 against Officer Michael Dohman, Officer Gregory Wilson, Officer Robert Weikel, Officer Antonio Olveras, Secretary of Corrections John E. Wetzel, Kathy Brittain, and David Radziewicz. He has also filed a Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1), a Motion for Preliminary Injunction (ECF No. 4), a Relief for Declaratory Judgment (ECF No. 5), a Motion for Appointment of Counsel (ECF No. 6), and a Motion for Reduction of Copies Filed (ECF No. 7). For the following reasons, the Court will grant Anderson leave to proceed *in forma pauperis*, dismiss his claims against Dohman, Wilson, Weikel, and Olveras, and transfer his claims against Wetzel, Brittain, and Radziewicz to the Middle District of Pennsylvania.

**I.     FACTS**

   **A.     Facts Concerning SCI Graterford**

From 2009 through 2012, Anderson worked at SCI Graterford as a clerk assigned to E-block. (*Id.* at 12.) At some point in 2010, Officer Dohman "approached [Anderson] in the supply room at the front of E-block and told [Anderson] if he did not give him names of dirty

(illegal) officers that [Anderson] would be placed in the hole (segregation) for a long time and transferred to another prison." (*Id.*) Anderson responded "that he does not know of any dirty officers." (*Id.*) Anderson alleges that from 2010 through 2015, Dohman "approached and harassed [him] several times . . . in different areas of the prison concerning [Anderson] giving defendant Dohman names of dirty officers." (*Id.* at 12-13.)

For example, Anderson states that on September 29, 2011, Dohman told Ms. Golden, the unit manager for E-block, to fire Anderson or he would be put in the hole. (*Id.* at 13.) Ms. Golden fired Anderson. (*Id.*) In early 2014, Officer Wilson told Anderson that "Dohman was getting impatient with [Anderson] and [Anderson] better get those names of the dirty officers." (*Id.*) On another occasion, Wilson "wrote a misconduct report on [Anderson] for being in an unauthorized area (E-block)." (*Id.*) The misconduct was dismissed because a sergeant testified that Anderson worked in E-block. (*Id.*)

On January 13, 2015, Anderson was talking to a prisoner in front of D-block when he was approached by security officer Ramond Lebron. (*Id.* at 13-14.) Lebron took Anderson to the auditorium, where he was "stripped naked and searched." (*Id.* at 14.) Lebron told Anderson that "defendant Wilson told him to take [Anderson] in the auditorium and strip search him." (*Id.*) Anderson was strip searched again on January 16 and 27, 2015. (*Id.*) Officers Wilson and Weikel were involved in the strip search that occurred on January 27, 2015. (*Id.*)

On February 27, 2015, Officers Wilson and Weikel confiscated a care package that Anderson had been authorized to take to E-block. (*Id.*) Eventually, Weikel "told [Anderson] that he is going to give the bag back but [Anderson] better watch his back because defendant Dohman has them watching [him]." (*Id.*)

2

On March 9, 2015, Officer Olveras "told [Anderson] that defendant Dohman said time is running out for [Anderson] to give up a dirty officer." (*Id.* at 15.) Anderson told Olveras that he did not know of one. (*Id.*) Anderson was then "placed in the hole (L-block) for his own protection." (*Id.*) That same day, he received a misconduct for contraband. (*Id.*) Subsequently, the facility manager dismissed the misconduct, and Anderson was released from the hole on April 16, 2015. (*Id.* at 16.)

In 2016, a staff member at SCI Graterford "placed a notice in [Anderson's] file stating: 'notify security when on visit.'" (*Id.* at 19.) Shortly thereafter, Anderson's visitor, Latisha Dudley, "began receiving harassment from the visiting reception staff." (*Id.* at 20.) On October 23, 2016, she was refused visitation by Officer Lahr after he stated that he had found drug residue in her bag. (*Id.*) Three weeks later, her visitation rights were reinstated. (*Id.*)

On November 6, 2016, Officer Jones told Dudley that she could not visit Anderson "until she produced a letter of recognition from Facility Manager Link." (*Id.* at 20-21.) The facility manager secretary told Dudley, however, that verification of her reinstatement of visitation rights was in Anderson's file and that if she had "any more problems to tell the visiting reception desk to contact the facility manager secretary." (*Id.* at 21.)

On August 1, 2017, Officer Lahr informed Dudley that "she was on probation and could not visit [Anderson]." (*Id.*) Subsequently, Anderson "was staffed (an interview of a prisoner by key staff members that are going to collectively vote by way of signature on a vote sheet issue in which the prisoner seek[s] approval for) at SCI Graterford to have Ms. Dudley reinstated to [his] visiting list." (*Id.*)

In late 2017, Anderson was approached by Olveras, who "told [Anderson] that defendant Dohman sends his regards and says he hasn't forgotten about you, and to enjoy your new

3

residence." (*Id.* at 16.) On December 15, 2017,[1] Anderson learned that he had been placed on a transfer list by Olveras. (*Id.*) Before the vote on reinstating Dudley to his visitation occurred, Anderson was transferred to SCI Frackville. (*Id.* at 21.)

### B. Facts Concerning SCI Frackville

Anderson was transferred to SCI Frackville on December 18, 2017. (*Id.* at 17.) Immediately after entering his assigned cell, Anderson "told his cellie . . . that he cannot defecate or urinate in the cell while his cellie is present and he does not allow his cellies to defecate or urinate in the cell [while] he is present." (*Id.*) The cellmate tried to transfer to another cell, but was unsuccessful. (*Id.*)

Anderson alleges that he does not attend meals "because he uses those times to defecate and urinate while his cellie attend[s] the meals." (*Id.* at 17-18.) Anderson was "forced to hold his defecation and urine for several days" when SCI Frackville was on lockdown from December 21 through 23, 2017. (*Id.* at 18.) He "has issues with pulling down his pants exposing his private parts to another man as he watch[es Anderson] defecate or urinate." (*Id.*) Anderson alleges that he cannot tolerate being locked in a cell with another man and "does not sleep for more than three hours on and off each night." (*Id.*) He states that he did not have a cellmate from 1994 to 2002 and from 2004 through 2017. (*Id.* at 18-19.) Anderson asked Defendants Wetzel, Brittain, and Radziewicz to issue him "z-code status" and to "assess it in the same manner as done for transgenders." (*Id.* at 19.) According to Anderson, all three individuals have not granted him that relief. (*Id.*)

---

[1] The Complaint indicates that this occurred on December 15, 2018. (Compl. at 16.) The Court presumes that Anderson's reference to that date is a typographical error.

4

Also after arriving at SCI Frackville, Anderson "attempted by way of vote sheet to have Ms. Dudley reinstated back to [his] visiting list." (*Id.* at 21.) Defendant Brittain denied the vote sheet in April of 2018. (*Id.*) Anderson did not find out that a vote sheet had been submitted until May 23, 2018, when unit manager Styka informed him "that his vote sheet for visitation rights with Ms. Dudley was denied." (*Id.* at 21-22.) According to Anderson, Brittan "did not follow procedure to have [Anderson] staffed for the vote sheet to have his visitation rights reinstated with Ms. Dudley." (*Id.* at 22.)

### C. Relief Sought

In his Complaint, Anderson asserts that he is raising Eighth and Fourteenth Amendment claims against the Defendants. (*Id.* at 22-23.) Specifically, he alleges that Dohman, Wilson, Weikel, and Olveras violated his rights by harassing him, strip searching him without justification, and causing a retaliatory transfer. (*Id.* at 22.) Anderson further contends that Wilson and Weikel "used their official authority as senior officers to have the visiting reception officers Jones and Lahr harass [his] visitor Ms. Dudley." (*Id.*) Finally, he argues that Brittain denied him due process by not "staffing" him with respect to visitation list, and that Brittain, Wetzel, and Radiewicz were deliberately indifferent to his health and "state of mind" by not granting him z-code status. (*Id.* at 22-23.) Anderson has filed a Motion for a Preliminary Injunction requesting that Wetzel and Brittain be ordered "to provide [him] with a temporary Z-code (single cell status) until the conclusion of this civil action." (Mot. for Prelim. Inj. at 1.) He also seeks declaratory and injunctive relief, as well as damages. (Mot. for Dec. J. at 1-3.)

## II. STANDARD OF REVIEW

The Court will grant Anderson leave to proceed *in forma pauperis* because it appears that

5

he is not capable of paying the fees to commence this civil action.[2] Accordingly, Anderson's Complaint is subject to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements do not suffice." *Id.* Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013), *abrogated on other grounds by, Coleman v. Tollefson*, 135 S. Ct. 1759, 1763 (2015). As Anderson is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

#### A. Claims Regarding SCI Graterford

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the reasons discussed below, Anderson has not set forth a claim for relief with respect to events that occurred during his incarceration at SCI Graterford.

---

[2] However, because Anderson is a prisoner, he will be obligated to pay the $350.00 filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

6

Pennsylvania's two-year limitations period applies to Anderson's claims. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Anderson's claims accrued when he "ha[d] a complete and present cause of action, that is, when [he could] file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotations omitted). Pursuant to the prison mailbox rule, a prisoner's complaint is considered filed at the time he or she hands it over to prison authorities for forwarding to the Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Terrell v. Benfer*, 429 F. App'x 74, 75 n.1 (3d Cir. 2011) (per curiam).

As noted above, Anderson raises claims regarding events that occurred at SCI Graterford from 2010 through 2017. With respect to these claims, Anderson states that they "involve[d] a connected series of events over a period of time and none of those events alone amounts to much." (Compl. at 12.) Under the continuing violations doctrine, a plaintiff can bring suit for actions that occurred outside of the applicable limitations period if "a defendant's conduct is part of a continuing practice [and] . . . the last act evidencing the continuing practice falls within the limitations period." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). (internal quotation marks and citation omitted). To determine whether a practice was continual, a court must consider "(1) whether the violations are part of the same subject matter and (2) whether the violations occurred frequently." *Cibula v. Fox*, 570 F. App'x 129, 135 (3d Cir. 2014) (citing *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-67 (3d Cir. 2013). "[T]o benefit from the doctrine, a plaintiff must establish that the defendant's conduct is 'more than the occurrence of isolated or sporadic acts.'" *Cowell*, 263 F.3d at 292. "If the plaintiff's claims are based on discrete acts which give rise to causes of action that can be brought individually, then the continuing violations doctrine does not serve to extend the applicable statute of limitations

period[]." *Anders v. Bucks Cty.*, No. CIV.A. 13-5517, 2014 WL 1924114, at *4 (E.D. Pa. May 12, 2014); *see also O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006).

To the extent that Anderson is asserting that the continuing violation doctrine applies to render all of his claims timely filed, the Court disagrees. Anderson did not initiate this case until August 9, 2018, the date that he gave his Complaint to prison authorities for mailing to this Court. (Compl. at 9.) The only claims regarding events at SCI Graterford that occurred within the two-year period from August 9, 2016 through August 9, 2018 are Anderson's claims regarding his denial of visitation with Ms. Dudley beginning on October 23, 2016, as well as a retaliatory transfer to SCI Frackville in December of 2017. Therefore, claims regarding any events that occurred prior to August 9, 2016 are untimely unless they are saved by the continuing violation doctrine.[3]

Here, it is apparent that the vast majority of conduct at SCI Graterford described in the Complaint occurred more than two years before the Complaint was filed and that Anderson knew or should have known of the basis for his claims at the time those events occurred. Moreover, the Court cannot conclude that the Defendants' conduct "is 'more than the occurrence of isolated or sporadic acts.'" *Cowell*, 263 F.3d at 292. As noted above, Anderson claims that he was fired on September 29, 2011, in response to Dohman's threat to have him placed in the "hole" if he was not. (Compl. at 13.) He was strip searched on three occasions in January of 2015. (*Id.* at 13-14.) Anderson then indicates that he was placed in the "hole" on March 4, 2014, and received a misconduct for contraband on March 9, 2015. (*Id.* at 15-16.) He was released from the "hole" on April 16, 2015. (*Id.* at 16.) His Complaint, however, does not refer to any events that

---

[3] While an inmate is entitled to tolling of the statute of limitations while exhausting administrative remedies, *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015), Anderson explicitly states in his Complaint, which he signed under penalty of perjury, that he did not exhaust his administrative remedies for events that occurred before 2016. (Compl. at 12, 24.)

8

occurred from that date until October 23, 2016, when he alleges that he began to be denied visitation with Ms. Dudley. (*See* Compl. at 20.) Given these sporadic events and the absence of any acts during the year-and-a-half gap between April 16, 2015 and October 23, 2016, the Complaint does not establish that the violations were "part of the same subject matter" and "occurred frequently." *Cibula*, 570 F. App'x at 135. Thus, the continuing violations doctrine does not apply to render Anderson's claims regarding events that occurred prior to August 9, 2016 timely filed, and those claims will be dismissed as time-barred.

Anderson's only timely claims with respect to actions that occurred at SCI Graterford are his claims regarding his denial of visitation with Dudley beginning on October 23, 2016, as well as his claims regarding a retaliatory transfer to SCI Frackville in December of 2017. With respect to the denial of visitation, Anderson asserts that Wilson and Weikel "used their official authority as senior officers to have the visiting reception officers Jones and Lahr harass [his] visitor Ms. Dudley." (Compl. at 22.) To the extent Anderson is attempting to raise claims on Dudley's behalf, he lacks standing to do so and, even if Dudley was a party to this case, Anderson would not be able to represent her because a non-attorney proceeding *pro se* may not represent others in federal court. *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim (quotations omitted)); *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) (a *pro se* litigant who is not an attorney may not pursue claims on behalf of anyone other than himself). In any event, this Court has held that "[c]onvicted prisoners, their family and spouses have no constitutional right to visitation." *Young v. Vaughn*, Civ. A. 98-4630, 2000 WL 1056444, at *2 (E.D. Pa. Aug. 1, 2000) (citations omitted); *Africa v. Vaughn*, Civ. A. 96-0649, 1996 WL 65445, at *1 (E.D. Pa.

Feb. 14, 1996) ("Neither convicted prisoners nor their family members have an inherent constitutional right to visitation."). Thus, Anderson cannot maintain his denial of visitation claim against Wilson and Weikel.

"To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (internal quotations omitted). While Anderson has established the second element of a retaliation claim, he fails to allege sufficient facts to satisfy the first element. Specifically, nothing in the Complaint suggests that Anderson was engaged in any protected activity at the time of the transfer. Instead, he suggests that he was retaliated against for refusing to provide names of allegedly "dirty" officers inside SCI Graterford. That, however, is not protected activity. *See Jackson v. Dohman*, No. 11-6890, 2013 WL 775598, at *2-3 (E.D. Pa. Mar. 1, 2013) (explaining that although a prisoner has a constitutional right not to affirmatively assist in a sting operation, a prisoner has no protected right to refuse to give information to officials in connection with an internal investigation); *cf. Woolfolk v. Meier*, No. 2:17-cv-03513, 2018 WL 1773397, at *4 (E.D. Pa. Apr. 12, 2018) (dismissing prisoner's retaliation claim because prisoner's refusal to provide information about which prisoners had contraband was not protected activity). Thus, Anderson cannot maintain his retaliatory transfer claim against Dohman, Wilson, Weikel, and Olveras.

### B. Claims Regarding SCI Frackville

Anderson's remaining claims, which he asserts against Wetzel, Brittain, and Radziewicz, concern events that have occurred during Anderson's current incarceration at SCI Frackville.

10

SCI Frackville is located in Schuylkill County, within the Middle District of Pennsylvania. *See* 28 U.S.C. § 118(b). Accordingly, because there is no apparent basis for venue for these claims in this District, and because the Court will dismiss all of Anderson's claims regarding SCI Graterford (for which venue in this District is proper), the Court will transfer Anderson's remaining claims to the United States District Court for the Middle District of Pennsylvania, where the events giving rise to these claims occurred and where Brittain, Wetzel, and Radziewicz are located. *See* 28 U.S.C. §§ 1391(b) & 1406(a); *Lafferty v. St. Riel*, 495 F.3d 72, 74-75 & n.3 (3d Cir. 2007) (declining to disturb district court's *sua sponte* transfer under § 1406(a)); *Decker v. Dyson*, 165 F. App'x 951, 954 n.3 (3d Cir. 2006) (district court may *sua sponte* transfer case under § 1406(a)).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Anderson leave to proceed *in forma pauperis*. Anderson's claims regarding events at SCI Graterford will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Anderson's claims against Wetzel, Brittain, and Radziewicz concerning events at SCI Frackville will be transferred to the United States District Court for the Middle District of Pennsylvania. Anderson's Motion for Preliminary Injunction (ECF No. 4), Motion for Appointment of Counsel (ECF No. 6), and Motion for Reduction of Copies Filed (ECF No. 7) will be left to the discretion of the transferee court. An appropriate Order follows.

BY THE COURT:

C. DARNELL JONES, II, J.

11